UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 08-CV-4401 (JFB) (ETB)
_____

SHAWN M. KUAR,

Plaintiff,

VERSUS

MICHAEL P. MAWN, ET AL.,

Defendants.

_____

MEMORANDUM AND ORDER
March 4, 2011
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Shawn M. Kuar ("plaintiff" or "Kuar") brought this action, *pro se*, against defendants New York State Trooper Michael P. Mawn ("Mawn"), Suffolk County Assistant District Attorney Melissa Price ("Price"), and Mark G. Kirshner, Esq. ("Kirshner"), alleging various constitutional and state common law claims stemming from a February 7, 2008 incident during which Mawn allegedly shot and used pepper spray against plaintiff. Specifically, plaintiff has brought Fourth Amendment excessive force and Eighth Amendment cruel and unusual punishment claims against Mawn, along with state common law claims for assault, battery, and negligence. Plaintiff has also alleged that defendant Price conspired with defendant Kirshner to deprive plaintiff of his right to counsel and his right to a jury trial in order to "Falsely Justify the Unlawful Actions of defendant Mawn." (Am. Compl. at 1 ¶ (d).) Defendant Mawn has moved to dismiss the Amended Complaint on the grounds of, *inter alia*, collateral estoppel, judicial estoppel, and under the doctrine set forth by *Heck v. Humphrey*. Defendant Price has moved to dismiss on the grounds that: (1) plaintiff's claim for malicious prosecution must fail due to plaintiff's conviction in state court, and (2) Price is immune from liability for such claims based upon her actions as a prosecutor.[1] For the reasons set forth herein, the Court dismisses the claims against defendant Price on the ground of absolute immunity. As to defendant Mawn's motion to dismiss, the Court grants

---

[1] The Court notes that defendant Kirshner has not yet appeared in this action and, accordingly, has not submitted any motion to dismiss.

the motion to dismiss plaintiff's Eighth Amendment claims, but denies defendant Mawn's motion in all other respects. However, as set forth in detail *infra*, the Court precludes plaintiff from relying on certain factual assertions in the Amended Complaint that are clearly contradictory to statements that were made by plaintiff during his plea allocution and were adopted by the state court in accepting plaintiff's plea.

I. BACKGROUND

A. Facts[2]

Plaintiff alleges that on February 7, 2008, he was outside of his daughter's home when he was shot in the back of the leg by defendant Mawn, a New York State Trooper. (Am. Compl. ¶ 1.) According to the Amended Complaint, Mawn exited his patrol vehicle after plaintiff's car had become disabled. (*Id.* ¶ 2.) Mawn then ordered plaintiff to raise his hands in the air, and drew and aimed his sidearm at plaintiff. (*Id.*) Plaintiff complied with Mawn's commands and told Mawn "please don't shoot." (*Id.*) Mawn then allegedly approached plaintiff "with his weapon aimed in a highly agitated state," which caused plaintiff "to flee toward his daughter's home in fear for his life." (*Id.* ¶ 3.) Mawn pursued plaintiff and shot him in the back of plaintiff's left leg "although no crime had been committed by the plaintiff." (*Id.* ¶ 4.) Subsequently, while plaintiff was "incapacitated by the bullet wound," Mawn allegedly sprayed "a copious amount of chemical spray" into plaintiff's face. (*Id.* ¶ 5.) Plaintiff claims that "[a]t no time" did he "fight, struggle with or pose any physical threat to defendant Trooper Mawn." (*Id.* ¶ 7.) Plaintiff further alleges that Mawn made false written statements in an affidavit in support of plaintiff's arrest that "misrepresented . . . plaintiff's role in the initial discharge of [Mawn's] weapon." (*Id.* ¶ 8.)

As to defendant Price, plaintiff alleges that Price initiated the prosecution against him based upon the "false statement of events reduced to writing by defendant Mawn." (*Id.* ¶ 19.) Plaintiff claims that Price later became aware of exculpatory evidence regarding plaintiff, including that "plaintiff did not in fact grab defendant Mawn's gun causing it to fire" and that "plaintiff was not shot from extremely close range," but she nevertheless "unlawfully embark[ed] upon a plan to protect defendant Mawn from the truth of the occurrences of February 7, 2008." (*Id.* ¶¶ 20-21.) Finally, plaintiff asserts that Price and Kirshner entered into a conspiracy to deprive plaintiff of his right to counsel and his right to a jury trial. (*Id.* ¶ 22.)

B. Procedural History

Plaintiff filed his Amended Complaint on Febuary 5, 2010. Defendant Price filed her motion to dismiss on March 1, 2010, and defendant Mawn filed his motion to dismiss on March 12, 2010. The docket reflects that plaintiff filed two responses in opposition, one on April 15, 2010 and one on April 21, 2010, but the substance of these responses is substantively identical and they will be referred to collectively as "plaintiff's opposition."[3] Defendants Price and Mawn

---

[2] The following facts are taken from the Amended Complaint and are not findings of fact by the Court. Instead, the Court will assume the facts in the complaint to be true and, for purposes of the pending motions to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

[3] The Court notes that, although the heading in plaintiff's opposition brief appears to apply only to defendant Price, plaintiff's opposition, in fact,

2

filed their replies on April 21, 2010. This motion is fully submitted, and the Court has considered all of the arguments of the parties.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. --- U.S. ----, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556 (internal citations omitted)).

Where, as here, the plaintiff is proceeding *pro se*, "[c]ourts are obliged to construe the [plaintiff's] pleadings . . . liberally." *McCluskey v. N.Y. State Unified Court Sys.*, No. 10-CV-2144 (JFB)(ETB), 2010 WL 2558624, at *2 (E.D.N.Y. June 17, 2010) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) and *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nonetheless, even though the Court construes a *pro se* complaint liberally, the complaint must still "'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Mancuso v. Hynes*, No. 09-CV-4393, 2010 WL 2131009, at *1 (2d Cir. May 27, 2010) (quoting *Iqbal*, 129 S. Ct. at 1949); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (applying *Twombly* and *Iqbal* to *pro se* complaint).

## III. DISCUSSION

As an initial matter, the Court construes plaintiff's constitutional claims as arising under 42 U.S.C. § 1983.[4] Section 1983 "is

---

responds to arguments that were raised in both defendant Price's and defendant Mawn's papers. (*See* Pl.'s Opp. at 4 (discussing whether *Heck* applies to bar plaintiff's claims); *see also id.* at 7-8 ("[T]he Court herein should Deny the defendants' motion . . . as to *all defendants listed therein* . . . ." (emphasis added)).) Accordingly, the Court will construe plaintiff's opposition brief as responding to both motions.

[4] The Court notes that, although plaintiff did not

3

not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). For claims under § 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted). Here, for purposes of the motions to dismiss, the parties do not dispute that defendants were acting under color of state law. Thus, the question presented in this case is whether defendants' conduct deprived plaintiff of the various rights he asserts under the Constitution.

Furthermore, the Court notes that Mawn's and Price's motions are based, in large part, upon plaintiff's guilty plea in state court for attempted assault in the second degree in connection with the February 7, 2008 incident. Accordingly, defendant Mawn submitted a copy of the transcript of plaintiff's plea allocution and guilty plea for the Court's consideration. (Mawn Ex. A.) Although a Court generally cannot consider material outside of the pleadings on a motion to dismiss, there are exceptions to this general rule. Specifically, the Court is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom.*, *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

Here, it is clear that the Court may take judicial notice of the fact that plaintiff pled guilty to attempted assault in the second degree in connection with the February 7, 2008 incident with defendant Mawn. In addition, the transcript of plaintiff's plea allocution may be considered as a public document, although the statements contained therein may only be considered to prove that such statements were made and may not be used to prove the truth of the matters asserted therein. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (testimony in other proceedings is a public record that court may take judicial notice of, but only for purposes of establishing the "existence of the opinion"); *Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ.

---

reference § 1983 in his complaint, he did bring a claim for conspiracy under 42 U.S.C. § 1985.

4

7607, 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation . . . a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts.").

### A. Defendant Price

Based on the allegations in the Amended Complaint, the Court liberally construes plaintiff's first cause of action against defendant Price as one asserting a claim for malicious prosecution.[5] (*See* Am. Compl. ¶¶ 19-21 ("Acting on false statement of events reduced to writing by defendant Mawn, defendant Price initiated prosecution of the plaintiff for Assault in the Second Degree. On February 29, 2008 & March 4, 2008, defendant Price became aware of conclusive evidence contradicting defendant Mawn's version . . . . Defendant Price decried her duty as an officer of the court and pursuing justice and unlawfully embarking [sic] upon a plan to protect defendant Mawn.").)[6]

Defendant Price has moved to dismiss the claims against her on the ground that she is absolutely immune from liability in this case, and as set forth below, the Court agrees.

"'It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983.'" *Crews v. Cnty. of Nassau*, No. 06-CV-2610 (JFB) (WDW), 2007 WL 4591325, at *13 (E.D.N.Y. Dec. 27, 2007) (quoting *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005)). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). For example, in *Hill*, the Second Circuit held that an Assistant District Attorney's alleged acts of, *inter alia*, "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" and "deliberately suppressing *Brady* material" were "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate." *Id.* at 661. Thus, "[i]t is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an

---

[5] It is unclear from plaintiff's opposition papers whether he also intended to bring excessive force claims against defendant Price. (*See, e.g.*, Pl.'s Opp. at 2 ("The plaintiff submits that the defendant A.D.A. Price is not immune from this plaintiffs [sic] excessive force and conspiracy claims.").) However, because defendant Price clearly is not alleged to have been involved in the actual shooting or the use of chemical spray against plaintiff on February 7, 2008, the Court finds that plaintiff's claims against defendant Price are more properly construed as malicious prosecution claims, rather than as claims of excessive force.

[6] Plaintiff also asserted a conspiracy claim against defendant Price. However, Price did not raise any arguments in her motion to dismiss regarding whether the conspiracy claim was sufficiently pled. Instead, she relies generally upon an assertion of absolute immunity, which would shield her from both the malicious prosecution and the conspiracy claims as pled in this case. For the reasons set forth *infra*, the Court finds that Price is absolutely immune from liability in this case with respect to any alleged malicious prosecution or conspiracy claim. Accordingly, the Court need not address whether plaintiff has properly pled a conspiracy claim in this case.

5

action for damages under § 1983." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir.1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

Here, defendant Price has absolute prosecutorial immunity because her alleged actions—suborning perjury, falsifying evidence, destroying and withholding exculpatory evidence, and coercing plaintiff's plea (Pl.'s Opp. at 2 & 7)—all occurred in the course of her role as an advocate and fall squarely within the scope of absolute immunity as defined by the Supreme Court. For example, plaintiff claims that defendant Price improperly initiated the prosecution against plaintiff based on defendant Mawn's allegedly false statements. However, both the Supreme Court and Second Circuit have made clear that the decision regarding whether or not to initiate prosecution is a quintessential prosecutorial function that is entitled to absolute immunity. *See Imbler*, 424 U.S. at 431 (absolute immunity exists for "initiating a prosecution"); *Ying Jing Gan*, 996 F.2d at 530 ("A prosecutor thus has absolute immunity in connection with the decision whether or not to commence a prosecution."); *accord Johnson v. City of New York*, No. 00-cv-3626 (SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (stating that prosecutorial functions protected by absolute immunity "include the decision to bring charges against a defendant"). Similarly, Price's alleged falsification of evidence and withholding or destroying of exculpatory evidence are actions which closely parallel those alleged in *Hill* and which the Second Circuit found were "clearly protected by the doctrine of absolute immunity." *Hill*, 45 F.3d at 661. Indeed, it is well-settled that prosecutors are entitled to absolute immunity when, in the course of a prosecution, they allegedly present false evidence to the Court or exert influence over a defendant's guilty plea. *See Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006) ("Plaintiff's claims against [his prosecutor], which encompass activities involving the initiation and pursuit of prosecution [including fabricating evidence used at trial, withholding exculpatory evidence, suborning perjury, and attempting to intimidate him into accepting a guilty plea], are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality."); *Urrego v. United States*, No. 00 CV 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (finding that a prosecutor is entitled to absolute immunity where he was alleged to have presented false evidence in order to obtain a superceding indictment) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 260 (1993); *Hill*, 45 F.3d at 662; *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 505 (2d Cir. 2003))); *see also Storck v. Suffolk Cnty. Dep't of Social Servs.*, 62 F. Supp. 2d 927, 943 (E.D.N.Y. 1999) ("A prosecutor is also absolutely immune from charges alleging the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity." (internal citations omitted)). Similarly, any actions that Price took during the plea bargaining stage are also protected by absolute immunity. *See Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir. 1981) ("We are satisfied that a prosecutor's activities in the plea bargaining context merit the protection of absolute immunity. The plea negotiation is an 'essential component' of our system of criminal justice. . . . The effective negotiation of guilty pleas would be severely chilled if a prosecutor were constantly concerned with the possibility of ruinous personal liability for judgments and decisions made at this critical stage of the criminal process."). In addition, the Court's conclusion that Price is entitled to absolute

6

immunity remains the same regardless of defendant Price's motivation for acting as she did in connection with plaintiff's prosecution. As the Second Circuit has explained, "absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include . . . allegedly conspiring to present false evidence at a criminal trial." *Dory*, 25 F.3d at 83. Because all of Price's alleged actions were taken in connection with her role as an advocate, she is entitled to absolute immunity.

Accordingly, the Court grants defendant Price's motion to dismiss all claims against her on the ground of absolute immunity.

B. Defendant Mawn

Plaintiff brought causes of action against defendant Mawn for unlawful use of excessive force and cruel and unusual punishment, in violation of the Fourth and Eighth Amendments, respectively. Plaintiff has also asserted state common law claims against Mawn for assault, battery, and negligence.

As an initial matter, Mawn argues that plaintiff's claims should be construed only as an excessive force claim arising under the Fourth Amendment, and not as a cruel and unusual punishment claim under the Eighth Amendment. The Court agrees. It is well-established that "[a]lthough the Eighth Amendment's prohibition against cruel and unusual punishment can be used as the basis for a Section 1983 claim to protect an individual convicted of a crime from the official use of force, a claim that the police used excessive force in the course of an individual's arrest or 'seizure' is properly analyzed under . . . the Fourth Amendment." *Smith v. P.O. Canine Dog Chas*, No. 02 6240 KMW DF, 2004 WL 2202564, at *7 n.7 (S.D.N.Y. Sept. 28, 2004) (internal citations omitted). *See also Bonilla v. Jaronczyk*, 354 F. App'x 579, 581 (2d Cir. 2009) ("While claims of excessive force 'in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment,' *Graham v. Connor*, 490 U.S. 386, 395, (1989), post-conviction excessive force claims, such as [plaintiff's], are properly considered under the Eighth Amendment, *see id.* n. 10." (additional citations omitted)). Accordingly, insofar as plaintiff's claims arise solely from his arrest and are not based on any post-conviction conduct, the Court will analyze them under the Fourth Amendment only, and any claims arising under the Eighth Amendment are hereby dismissed.

Defendant Mawn has moved to dismiss plaintiff's Fourth Amendment excessive force claim in the Amended Complaint on the grounds that plaintiff's § 1983 claims are barred by the doctrines of collateral estoppel[7] and judicial estoppel, and by *Heck v. Humphrey*, 512 U.S. 477 (1994) insofar as

---

[7] Plaintiff has represented to the Court that his direct appeal of his plea is still pending. (*See* Docket No. 15.) Although the parties have not updated the Court as to the status or resolution of plaintiff's appeal, if the appeal is still pending, it is not clear whether defendant Mawn can even rely upon collateral estoppel to preclude plaintiff's claims. *See generally Industrial Risk Insurers v. Port Auth. of N.Y. and N.J.*, 493 F.3d 283, 288 n.3 (2d Cir. 2007) (discussing that although there is "authority in New York that collateral estoppel may apply to a lower court decision pending appeal," other courts have "suggest[ed] caution in applying preclusion in such situations"). In any event, the Court need not resolve this question because, even assuming *arguendo* that defendant could assert a collateral estoppel argument, the Court finds, for the reasons discussed herein, that plaintiff's claims in this case are not barred.

7

the current action would, according to Mawn, render plaintiff's criminal conviction invalid. However, for the reasons set forth *infra*, the Court finds that dismissal of plaintiff's Amended Complaint is not warranted on these grounds. Specifically, the Court finds that the excessive force issue raised in the current litigation was not "necessarily decided" in the underlying criminal case for purposes of collateral estoppel, nor will the current case render plaintiff's guilty plea invalid under *Heck*. However, under the doctrine of judicial estoppel, the Court will preclude plaintiff from taking factual positions in this case which are directly contrary to statements that he made in connection with his plea and that were adopted by the court which accepted his plea. Thus, as explained in more detail below, plaintiff is precluded from asserting here: (1) that "no crime had been committed" by plaintiff prior to Mawn shooting plaintiff (Am. Compl. ¶ 4), (2) that plaintiff did not "fight, struggle with or pose any physical threat to defendant Trooper Mawn" (*Id.* ¶ 7); (3) that plaintiff "had committed no crime and pose [sic] no threat to defendant Mawn" (*Id.* ¶ 16); and (4) "[a]t the time of the occurrences complained of herein, on February 7, 2008, the plaintiff had committed no crime and did not pose a threat to defendant NYS Trooper Mawn. Plaintiff was not . . . acting aggressive . . . . He was not fleeing a crime and had a clear right to run or walk away from defendant [Mawn's] attempt to deprive him of his liberty . . . .") (*Id.* at ¶ 18).

Because the details of plaintiff's underlying plea are relevant to all three of defendant Mawn's asserted grounds for dismissal, the Court first outlines the nature of plaintiff's plea and the statements he made during his plea allocution before turning to the specifics of defendant's arguments. As noted *supra*, plaintiff pled guilty to attempted assault in the second degree, in violation of New York Penal Law Section 120.05. Although the exact subsection of the statute to which plaintiff was pleading guilty was not specified on the record, it is clear from the nature of plaintiff's statements during his plea allocution that he pled guilty to subsection (3), which makes it illegal to assault a police officer with the intent to prevent the officer from performing a lawful duty.[8] Specifically, the statute states that a person is guilty of second degree assault when "[w]ith intent to prevent a . . . police officer . . . from performing a lawful duty . . . he or she causes physical injury to such . . . police officer." N.Y. Penal Law § 120.05(3). Accordingly, in pleading guilty under Section 120.05, plaintiff made the following admissions during his plea allocution:

> Q [Price]: Sir, let me direct your attention to February 7th of 2008 at approximately 8:07 p.m. Were you at 1775 Heckscher Avenue in Bay Shore, Town of Islip, Suffolk County, New York?
>
> A [Kuar]: Yes, ma'am.
>
> Q: And at that time, were you being pursued by the New York State Police for reckless driving and driving a stolen car?
>
> A: Yes, ma'am.
>
> Q: And you were fleeing from the police?

---

[8] However, even if plaintiff had pled guilty to subsection (2) rather than subsection (3), this distinction would not impact this Court's conclusion that dismissal is not warranted at this juncture.

8

> A: Yes, ma'am.
>
> Q: And while the New York State Trooper was attempting to place you under arrest, did you struggle with him and refuse to be placed under arrest?
>
> A: Yes, yes, ma'am.

(Tr.[9] at 11:22-12:19.) Plaintiff's counsel also stipulated that "as a result of [Kuar's] actions Trooper Mawn suffered from physical injury in the nature of pain, suffering and bruising to his face and his jaw." (*Id.* at 12:24-13:6.) In accepting plaintiff's guilty plea, the state court necessarily found that plaintiff's plea allocution proved the four elements of a Section 120.05(3) offense, namely: "[1] defendant caused injury to a police officer; [2] defendant knew that the injured party was a police officer; [3] the officer was performing his lawful duty; and [4] defendant intended to prevent such performance." *People v. Milhouse*, 676 N.Y.S.2d 555, 557 (App. Div. 1998). Beyond the statements outlined above, plaintiff also admitted during his plea allocution that defendant Mawn's gun was discharged "accidentally" during Mawn's struggle with plaintiff. (Tr. at 12:20-23.) However, the Court notes that this statement was not necessary to the court's acceptance of plaintiff's guilty plea, insofar as this statement does not relate to any of the four elements of a Section 120.05(3) offense. In other words, whether an officer who is attempting to perform a lawful duty, such as an arrest, injures the arrestee in the process—and whether that injury was "accidental" or not—need not be resolved to determine whether the arrestee injured the officer in an attempt to prevent the officer from performing a lawful duty. Accordingly, as set forth below, plaintiff's statement regarding the force that Mawn used against him was not a necessary part of plaintiff's guilty plea and, as such, plaintiff's claims in the current case regarding excessive force are not barred by his conviction for attempted assault. Moreover, even apart from the issue of the alleged shooting of plaintiff by defendant Mawn, plaintiff also claims he was sprayed with a chemical *after* he was shot and incapacitated, and such claim is also not precluded by his guilty plea or any statements made during that plea.

1. Collateral Estoppel

A court may dismiss a claim on *res judicata* or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment. *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata*); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *see also Wilson v. Ltd. Brands*, No. 08 CV 3431 (LAP), 2009 WL 1069165, at *4 (S.D.N.Y. Apr. 17, 2009) (granting judgment on the pleadings based on collateral estoppel); *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) ("[T]he defense of res judicata or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment"). "[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "Collateral estoppel, like

---
[9] "Tr." refers to the transcript of plaintiff's guilty plea, attached to defendant Mawn's motion to dismiss as Exhibit A.

9

the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted). The Second Circuit has made clear that "whether or not . . . a claim is precluded depends on the issues that were actually litigated and necessarily decided in the prior proceedings, and may not be determined *a priori*." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000). Accordingly, "[t]he doctrine of collateral estoppel requires a detailed examination of the record in the prior state criminal case." *Id.*

As to plaintiff's claims in this case, the Court finds that the issue of excessive force was not "necessarily decided" in the criminal case against plaintiff. As noted *supra*, none of the elements of the attempted assault charge under New York Penal Law Section 120.05 related to defendant Mawn's use of force against plaintiff; instead, the elements of the attempted assault charge focused solely on *plaintiff's* knowledge and intent. Accordingly, the simple fact that plaintiff pled guilty to attempting to assault Mawn does not, in and of itself, preclude his claims of excessive force. Moreover, even though plaintiff agreed, on the record, that defendant Mawn's gun was discharged "accidentally," this statement essentially was superfluous for purposes of plaintiff's plea insofar as it did not relate to any of the elements of the offense and, as such, did not relate to an issue that was "actually litigated" and "necessarily decided" in the underlying criminal case. Moreover, even if it were true that the discharge of the gun was accidental, plaintiff said nothing during his plea allocution about Mawn's use of "chemical" spray against plaintiff *after* plaintiff had been shot. *See Getlin v. Zoll*, 707 F. Supp. 2d 369, 377 (E.D.N.Y. 2010) ("Plaintiff's conviction does not preclude his excessive force claim because that conviction did not resolve to his detriment his claim that after he was shot, he was pulled through the window of the car, kicked and punched."). Thus, although plaintiff's statement under oath regarding the accidental nature of the firing may cast doubt on his ultimate ability to succeed on these claims on the merits, neither the fact of his plea alone nor the statements he made during his plea allocution preclude him from asserting here that Mawn used excessive force in effecting the arrest of plaintiff. *Cf. Griffin v. Crippen*, 193 F.3d 89, 91-92 (2d Cir. 1999) ("Although appellant's excessive force claim is weak and his evidence extremely thin, [the district court's *sua sponte* dismissal] of the excessive force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him. The district court mistakenly concluded that, because appellant pled guilty to assaulting the guards and because his injuries were not severe, his claim failed as a matter of law and no reasonable jury could find in his favor. The assault charges to which appellant pled guilty certainly cast doubt on his claim. They do not, however, preclude a reasonable jury from finding that excessive force was used against him on the day in question.").

Faced with similar factual allegations to those raised in this case, other courts have

likewise found that excessive force claims were not necessarily precluded by an underlying assault or related criminal conviction. For example, in *Sullivan*, the Second Circuit explained:

> As our brethren in other Circuits have squarely held, the jury's return of a guilty verdict in state court for resisting arrest and/or other offenses such as assault on a police officer does not necessarily preclude a subsequent claim of excessive force in federal court. . . . The mere fact that [plaintiff] was conclusively shown to have resisted arrest and harassed [the defendant police officer] could not foreclose the possibility that the force used by [defendant] in response to [plaintiff's] misconduct was excessive. . . . The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer. It is clear, therefore, that there is no inherent conflict between a conviction for resisting arrest or harassment of a police officer and a finding that the police officers used excessive force in effectuating that arrest.

225 F.3d at 165-66.

Similarly, plaintiff in this case could have attempted to assault defendant Mawn to prevent him from performing a "lawful duty" (that is, the arrest of plaintiff), but Mawn could have responded to that attempt by using excessive force, including by allegedly shooting plaintiff and spraying him with "chemical" spray. Such a use of force, even if excessive, would not render the underlying arrest unlawful, nor would it necessarily invalidate plaintiff's conviction for attempting to assault Mawn, because the two sets of events—plaintiff's assault of Mawn and Mawn's alleged use of excessive force against plaintiff—are not mutually exclusive. *See id.* at 166 ("A lawful arrest may be accompanied by excessive force; thus the mere fact of [plaintiff's] convictions for harassment and resisting arrest, is not incompatible with his claim for excessive force."). As an additional example, in *Irrizarry v. Kenny*, No. 92-cv-1511 (SAS), 1995 WL 678747 (S.D.N.Y. Nov. 14, 1995), plaintiff had been convicted of second degree assault against a police officer.[10]

---

[10] Consistent with this Court's description of the elements of a Section 120.05(3) violation, the *Irrizarry* court explained that this conviction required "a finding that: (1) [defendant Irrizarry] bit Sgt. Kenny on the arm; (2) Kenny was a police officer at the time Irrizarry bit him; *(3) at the time he was bitten and at the time he had the confrontation with Irrizarry, Kenny had the authority to perform and was performing a lawful duty, namely making an arrest*; (4) at the time he bit Kenny, Irrizarry knew Kenny was a police officer and knew Kenny was performing a lawful duty; (5) at the time he bit Kenny, Irrizarry intended to prevent Kenny from performing a lawful duty; and (6) Irrizarry's act of biting Kenny in the forearm in fact caused physical injury by impairing Kenny's physical

11

Defendants argued that because the jury that convicted plaintiff had rejected plaintiff's justification defense, plaintiff should be estopped from claiming that defendants used excessive force against him. *Id.* at *3. The court disagreed, however, and explained that although the jury necessarily found that defendants were acting "lawfully" in arresting plaintiff, and that plaintiff was not entitled to use force and was the aggressor, "[t]hese findings . . . do not preclude a finding that the defendants, while not the aggressors, responded to an unlawful attack with excessive force." *Id.* Indeed, "[i]t is well established that a lawful arrest can be accompanied by excessive force. A police officer, acting within his or her authority or in justifiable self-defense, may still exceed his privilege to use force." *Id.* Accordingly, as is the case here, plaintiff's excessive force claims were not barred because "[n]either the finding that plaintiff injured defendants nor that plaintiff's injury was inflicted in the course of defendants' performance of a lawful duty would be questioned by a subsequent finding that the defendants used excessive force." *Id.*

In sum, although plaintiff's underlying conviction for assault and his statement that the discharge of Mawn's weapon was "accidental" may undermine his claims of excessive force, neither precludes, for purposes of the collateral estoppel analysis, a finding that Mawn may have used excessive force in effectuating his arrest of plaintiff.[11]

### 2. The *Heck* Bar

Defendant Mawn contends that because plaintiff's § 1983 claim for excessive force calls into question his prior conviction—which is pending on appeal but has not yet been reversed or invalidated[12]—this claim must be dismissed under the *Heck* bar. (*See* Mawn Mem. of Law at 18-19.) In *Heck v. Humphrey*, the Supreme Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (citing *Heck*, 512 U.S. at 480-90). In answering this question, the Court held that

---

condition or causing him substantial pain." *Irrizarry*, 1995 WL 678747, at *2 (emphasis in original).

[11] Defendant Mawn also argues that plaintiff's state-law assault and battery claim should be precluded by collateral estoppel. The Second Circuit has made clear that, "except for § 1983's requirement that the tort be committed under color of state law, the essential elements of [an excessive force claim and an assault and battery claim are] substantially identical." *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991). Thus, the Court finds that plaintiff's assault and battery claim is not collaterally estopped for the same reasons that the Court has already found plaintiff's excessive force claim not to be precluded.

[12] The Court notes that plaintiff has provided contradictory information to the Court regarding whether his appeal is still pending. Although plaintiff indicated in his January 2009 letter that his direct appeal is pending (*see* Docket No. 15 at 3), he stated in his opposition papers that "[t]he plaintiff, at plea [sic] admitted that he resisted officer Mawn's arrest, and thus his criminal conviction is not challenged nor collaterally attacked." (Pl.'s Opp. at 6.) In an abundance of caution, the Court will assume for the sake of the pending motions that plaintiff's appeal is still pending. In any event, the Court finds that plaintiff's claims should not be precluded by collateral estoppel, judicial estoppel, or the *Heck* bar, and thus whether plaintiff's appeal is still pending is inapposite to the Court's ruling.

12

"a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489-90. The Court further explained:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted) (emphasis in original). "Accordingly, when the civil plaintiff has pending an appeal from his criminal conviction, 'the district court must consider whether a judgment in favor of the plaintiff would *necessarily imply the invalidity of his conviction or sentence*; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Jackson v. Suffolk Cnty. Homicide Bureau*, 135 F.3d 254, 256 (2d Cir. 1998) (quoting *Heck*, 512 U.S. at 487) (emphasis added); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence." (emphasis in original)). "However, 'if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.'" *Jackson*, 135 F.3d at 256 (quoting *Heck*, 512 U.S. at 487).

Thus, although *Heck* allows for the dismissal of certain Section 1983 claims, it "does not require dismissal of any claim whose adjudication in favor of the plaintiff would not necessarily invalidate his conviction or sentence." *Smith v. Fields*, No. 95 Civ. 8374, 2002 WL 342620, at *4 (S.D.N.Y. March 4, 2002). "It is well established that an excessive force claim does not usually bear the requisite relationship [to the underlying conviction] under *Heck* to mandate its dismissal." *Id.; see also Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 543-44 (S.D.N.Y. 2005) ("[J]udgment in favor of plaintiff on his § 1983 [excessive force] action would not establish the invalidity of his conviction for Assault in the Third Degree. We agree with plaintiff that a jury could reasonably conclude that even though [plaintiff] assaulted [the defendant officer], after [plaintiff] had been subdued, he was subjected to excessive force by the individual defendants." (internal citations omitted)). As indicated *supra*, plaintiff's claim that defendant Mawn used excessive force against him when Mawn shot plaintiff and then sprayed him with "chemical" spray does not necessarily imply that plaintiff's conviction for the attempted assault of defendant Mawn is invalid. Indeed, Mawn's alleged use of excessive force is not foreclosed by any of the elements of the

underlying assault charge, which are: (1) whether plaintiff caused injury to a police officer; (2) whether plaintiff knew that the injured party was a police officer; (3) whether the officer was performing his lawful duty; and (4) whether the defendant intended to prevent the performance of a lawful duty. Similarly, plaintiff's statement that Mawn shot him "accidentally" was unnecessary for purposes of his guilty plea and, accordingly, plaintiff's contention here that the shooting was a use of excessive force does not necessarily imply the invalidity of his conviction. To the extent that defendant argues that plaintiff's claims necessarily imply that Mawn was not performing a "lawful duty" and thus would invalidate the conviction by disproving that element of the crime, the Court rejects this argument.[13] As already noted, it is axiomatic that a lawful arrest can be accompanied by excessive force and, as such, the fact that Mawn may have used excessive force against plaintiff does not establish that Mawn was not performing a "lawful duty" in arresting plaintiff. Thus, because "plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," *Jackson*, 135 F.3d at 256 (quoting *Heck*, 512 U.S. at 487), his § 1983 action does not bear the requisite relationship to his underlying conviction and, therefore, is not barred by *Heck*. Accordingly, defendant Mawn's motion to dismiss on this ground is denied.[14]

---

[13] Defendant cites two district court cases that found *Heck* barred a plaintiff's excessive force claim where the plaintiff had been convicted for assaulting a law enforcement or corrections officer in order to prevent the officer from performing a "lawful duty." *See Douglas v. Smith*, No. 05-CV-1000 (GTS/DRH), 2009 WL 789450 (N.D.N.Y. Jan. 26, 2009); *Dye v. Virts*, No. 03-CV-6273L, 2004 WL 2202638 (W.D.N.Y. Sept. 28, 2004). Both of these cases based their holdings on the fact that if the plaintiff's version of the facts were accepted—that is, if the court were to accept as true that the officer in question had been the aggressor and the plaintiff had merely been defending himself—then plaintiff's claims would necessarily invalidate the underlying assault conviction. *See Douglas*, 2009 WL 789450, at *2; *Dye*, 2004 WL 2202638, at *4. However, these cases are distinguishable from the current case. Specifically, both cases involved motions for summary judgment—not motions to dismiss—where it was apparent *after* discovery that the plaintiff was relying squarely on factual assertions that necessarily undermined his conviction for assault. Here, at this early stage of plaintiff's case, the Court finds that the correct approach—particularly in light of the well-established principle than an excessive force claim is not automatically precluded by an underlying conviction for assault—is to let the plaintiff's excessive force claims proceed, but to preclude him from relying on certain factual allegations in his Amended Complaint that that are clearly contradictory to statements that were made by plaintiff during his plea allocution and were adopted by the state court in accepting plaintiff's plea. If, after discovery has closed, defendants believe that plaintiff has produced no evidence in support of his claim other than assertions that directly contradict his plea, they are free to move for summary judgment at that time.

[14] The Second Circuit has noted that in *Heck*, "the Supreme Court raised, but did not answer, the question of whether the federal court might wisely abstain from adjudicating a civil claim that neither depends on nor necessarily results in invalidation of, but could have an impact on, the conviction." *Jackson*, 135 F.3d at 257. Where a claim would have "an impact" on the conviction, the Second Circuit stated that the "proper course is for the district court to stay further proceedings on that claim pending termination of the state-court criminal proceedings, rather than to dismiss it." *Id.* Here, however, as explained in great detail *supra*, plaintiff's excessive force claim has no bearing or impact on his underlying conviction. Accordingly, the

### 3. Judicial Estoppel

Judicial estoppel is an equitable doctrine that "prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). As explained by the Supreme Court, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). The purpose of the doctrine "is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50 (internal quotation marks and citations omitted). "Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (citing *New Hampshire*, 532 U.S. at 750-51). The Second Circuit has explained that, "[i]n this circuit . . . we further limit judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain. This latter requirement means that judicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements." *In re Adelphia Recovery Trust*, --- F.3d ----, 2011 WL 420428, at *14 (2d Cir. 2011) (internal quotation marks, citations, and alterations omitted).

Defendant Mawn argues that judicial estoppel acts as a bar to plaintiff's entire case because of plaintiff's inconsistent statements between his Amended Complaint and his plea allocution. However, the Court disagrees. As has already been exhaustively explained, plaintiff's conviction for attempted assault means only that plaintiff attempted to physically assault defendant Mawn while Mawn was performing a lawful duty (that is, arresting plaintiff). The conviction does *not* mean that defendant Mawn could not possibly have used excessive force against plaintiff in effectuating that arrest.

Moreover, plaintiff's statement during his plea allocution that Mawn's weapon was discharged "accidentally" does not judicially estop plaintiff from bringing his excessive force claim because this statement was not "adopted" by the court that heard plaintiff's plea. As already noted, this statement was not a part of the elements of the crime to which plaintiff was pleading guilty and, as such, was not a statement that the state court had to judge or accept the accuracy of in accepting plaintiff's plea. In other words, had the prosecutor not asked plaintiff whether the gun had been discharged

---

Court finds that a stay of plaintiff's excessive force claim is not warranted under the circumstances. *Cf. McKenna v. Inc. Vill. of Northport*, 331 F. App'x 804, 805-06 (2d Cir. 2009) (finding district court did not abuse discretion in denying stay where plaintiff did "not explain what 'impact' the civil claim might have had on the criminal proceedings"); *Langdell v. Marcoux*, No. 2:08-CV-161, 2009 WL 890121, at *3 (D. Vt. March 30, 2009) (denying motion to stay where, *inter alia*, it was "not clear whether [plaintiff's] excessive force claim will have any impact on his state court case, since the degree of force used by the arresting officers may not bear any relationship to the underlying charge").

accidentally, the court's ability to accept plaintiff's plea would not have been impacted because plaintiff's guilt was conclusively established through his answers to the prosecutor's other questions. Accordingly, given that the state court need not have accepted the accuracy of defendant's statement regarding the discharge of Mawn's gun, the risk of inconsistent results between this litigation and the prior criminal case does not exist, and the doctrine of judicial estoppel should not act as a bar to plaintiff's entire case.

The Court finds distinguishable the case that defendant Mawn relies upon in support of his argument. Specifically, defendant relies upon *Perlleshi v. County of Westchester*, No. 98-cv-6927, 2000 WL 554294 (S.D.N.Y. Apr. 24, 2000), in which the court dismissed plaintiff's excessive force claims against one of the defendant police officers on judicial estoppel grounds. In *Perlleshi*, the plaintiff had given deposition testimony that was completely inconsistent with the sworn statements he made when he was pleading guilty to charges of obstructing justice, resisting arrest, and a seatbelt infraction. *Id.* at *5-6. However, contrary to defendant Mawn's contention, the court did not dismiss plaintiff's claims solely because of these inconsistencies. Instead, the court explained that it was dismissing the case because there was *no* other evidence offered in opposition to the defendant's motion other than the inconsistent deposition testimony. *Id.* at *6. In fact, because "the issue of excessive force was not litigated before [the court that accepted the plaintiff's plea]," the court noted that it would have denied defendant's motion "if there was other evidence in the record that tended to support [plaintiff's] claim." *Id.* Moreover, the procedural posture in *Perlleshi* is distinguishable from that of the instant case, in that *Perlleshi* involved a motion for summary judgment brought *after* the completion of discovery, as opposed to a motion to dismiss based only on the allegations in the complaint. As noted *supra* in footnote 13, once discovery has closed, if the defendant believes that plaintiff has produced no evidence in support of his claim other than assertions that directly contradict his plea, he is free to move for summary judgment at that time.

Nevertheless, although the Court denies defendant's motion to dismiss plaintiff's claims in their entirety based on judicial estoppel, the Court does find it appropriate to preclude plaintiff from relying on factual allegations that specifically contradict statements made under oath during his plea allocution and that were adopted by the state court in accepting his plea. In particular, plaintiff is precluded from offering or relying upon factual allegations that contradict facts that he allocuted to and that went directly to the elements of the attempted assault offense, namely: (1) on February 7, 2008, at the time that defendant was confronted by defendant Mawn, plaintiff was being pursued by the New York State Police for reckless driving and driving a stolen car; (2) at that time, plaintiff was fleeing from the police; (3) when defendant Mawn attempted to place plaintiff under arrest, plaintiff struggled with Mawn and refused to be placed under arrest; and (4) as a result of plaintiff's actions, Mawn suffered from physical injury in the nature of pain, suffering and bruising to his face and his jaw. (Tr. at 11:22-13:6.) Stated otherwise, plaintiff is precluded from presenting or relying upon evidence that contradicts the fact that: (1) he attempted to cause physical injury to Mawn; (2) he knew Mawn was a police officer; (3) Mawn was performing the lawful duty of attempting to arrest plaintiff; and (4) plaintiff acted with the intent to prevent Mawn from arresting him. Accordingly, the Court strikes paragraph seven of the Amended Complaint,

which states that "[a]t no time did the plaintiff fight, struggle with or pose any physical threat to defendant Trooper Mawn," and the portion of paragraph sixteen that states plaintiff "had committed no crime and pose [sic] no threat to defendant Mawn." In addition, as to paragraph four of the Amended Complaint ("Officer Mawn gave chase and shot this plaintiff in the back of his left leg although no crime had been committed by the plaintiff."), the Court strikes the latter portion of this statement that reads "although no crime had been committed by the plaintiff." Likewise, the Court strikes the following portions of paragraph eighteen: "[a]t the time of the occurrences complained of herein, on February 7, 2008, the plaintiff had committed no crime and did not pose a threat to defendant NYS Trooper Mawn. Plaintiff was not . . . acting aggressive . . . . He was not fleeing a crime and had a clear right to run or walk away from defendant [Mawn's] attempt to deprive him of his liberty . . . ."[15] Each of these statements clearly contradicts statements that he made during his plea allocution and that were adopted by the state court in accepting his plea. *Cf. Garcia v. Greco*, No. 05-cv-9587, 2010 WL 446446, at *5-6 (S.D.N.Y. Feb. 9, 2010) (precluding plaintiff from relying on statements in his deposition that directly contradicted his admission of guilt on underlying attempted assault of police officer charge, but explaining that "[c]ontrary to what Defendant argues . . . the application of judicial estoppel in this case does not completely bar Plaintiff's claim. Claims of excessive force and resisting arrest are not mutually exclusive. Although Plaintiff has not produced any evidence aside from his deposition, he is not estopped from relying on all parts of the deposition— only those parts in which he portrayed himself as a passive victim." (internal citation omitted)).

4. Negligence Claim

Finally, defendant Mawn has moved to dismiss the state-law negligence claim on the ground that "a party seeking damages for wrongful arrest and detention may not recover under negligence principles." (Mawn Mem. of Law at 20.) As an initial matter, it is true that, under New York law, "once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently." *Vilkhu v. City of New York*, No. 06-CV-2095 (CPS) (JO), 2008 WL 1991099, at *9 (E.D.N.Y. May 5, 2008) (internal quotation marks and citations omitted). Accordingly, "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Id.* (internal quotation marks and citations omitted).

However, the Court finds that it is premature to address this issue on a motion to dismiss. Plaintiff is entitled to plead claims in the alternative, and the Court is not in a position before any discovery has been conducted to determine whether plaintiff's negligence claims are based on the same facts underlying plaintiff's claim for excessive force. Thus, defendant's motion to dismiss plaintiff's negligence claim for failure to state a claim is denied.[16]

---

[15] The Court notes that, in his opposition papers, plaintiff appears to have already conceded that he resisted Mawn's arrest and that he has been convicted for the attempted assault of Mawn. (*See* Pl.'s Opp. at 4 & 6.)

[16] Defendant Mawn also spent much of his reply arguing that plaintiff's plea was voluntary and not coerced. (*See* Mawn Reply at 3-8.)

## IV. CONCLUSION

For the foregoing reasons, the Court dismisses the claims against defendant Price on the ground of absolute immunity. The Clerk of the Court shall terminate Price as a party to this action. As to defendant Mawn's motion to dismiss, the Court grants the motion to dismiss plaintiff's Eighth Amendment claims, but denies defendant Mawn's motion in all other respects. However, as set forth in this Memorandum and Order, the Court precludes plaintiff from relying on certain factual assertions that are clearly contradictory to statements that were made by plaintiff during his plea allocution and were adopted by the state court in accepting plaintiff's plea.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date: March 4, 2011
Central Islip, NY

\* \* \*

_____
However, the Court does not construe plaintiff's complaint as a direct challenge to the voluntary nature of his plea. Instead, as indicated *supra* with regard to the claims against defendant Price, the Court considers plaintiff's allegations regarding the involuntary and coerced nature of his plea to be part of his malicious prosecution claim against defendant Price. These claims do not relate to the excessive force or other claims brought against defendant Mawn. Moreover, to the extent that plaintiff is seeking to challenge his plea, he may not do so in federal court through a Section 1983 action, but instead must do so by appealing or otherwise challenging his plea in state court. Accordingly, the Court need not address defendant Mawn's arguments regarding the voluntary, knowing, and intelligent nature of plaintiff's plea.

Plaintiff Shawn M. Kuar is appearing *pro se*. Defendant Melissa Price is represented by Christine Malafi, Suffolk County Attorney, H. Lee Dennison Building, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, New York 11788, by Arlene S. Zwilling, Assistant County Attorney. Defendant Michael Mawn is represented by Andrew M. Cuomo, Attorney General of the State of New York, 300 Motor Parkway, Suite 205, Hauppauge, New York 11988, by Anne C. Leahey, Assistant Attorney General.